**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ROBERTO ALMODOVAR, JR. | Case No. 18-CV-2341 |
| Plaintiff, | |
| | Honorable Joan B. Gottschall |
| v. | Honorable M. David Weisman |
| REYNALDO GUEVARA, ET. AL. | |
| Defendants. | |

| | |
|---|---|
| WILLIAM NEGRON | Case No. 18-CV-2701 |
| Plaintiff, | |
| | Honorable Joan B. Gottschall |
| v. | Honorable M. David Weisman |
| REYNALDO GUEVARA, ET. AL. | |
| Defendants. | |

**DEFENDANT CITY OF CHICAGO'S MOTION TO BIFURCATE
PLAINTIFFS' *MONELL* CLAIMS AND TO STAY *MONELL* DISCOVERY**

# TABLE OF CONTENTS

BACKGROUND ....................................................................................................................... 1

LEGAL STANDARD ............................................................................................................. 4

ARGUMENT ............................................................................................................................ 5

I.    Whether Plaintiffs Succeed or Fail On The Claims Against Defendant Officers, *Monell* Litigation Is Not Necessary. ........................................................................................... 6

A.    There is no *Monell* liability unless Defendant Officers are found liable. ..................... 6

B.    The City's Indemnification of Defendant Officers and Consent Judgment obviates the need for any further proceedings if Plaintiffs prevail against the Defendant Officers. ............................. 9

II.    Bifurcation Will Promote Efficiency and Judicial Economy. ...................................... 11

III.    Bifurcation Will Prevent Undue Prejudice to Defendants. ......................................... 15

CONCLUSION ..................................................................................................................... 17

i

# TABLE OF AUTHORITIES

## Cases

*Ackerman v. Allen,* 2017 WL 1536447 (N.D. Ill. 2017) ................................................................. 8

*Andersen v. City of Chicago,* 16 C 1963, 2016 WL 7240765 (N.D. Ill. Dec. 14, 2016) ....................... 7, 11

*Arrington v. City of Chicago,* 2018 WL 3861552 (N.D. Ill. Aug. 14, 2018) .......................................... 8

*Bradford v. City of Chicago,* No. 16-CV-01663 (N.D. Ill. Oct. 16, 2019) ............................................ 5

*Castillo v. City of Chicago*, No. 11 C 7359, 2012 WL 1658350 (N.D. Ill. May 11, 2012) ..................... 11

*Chlopek v. Fed. Ins. Co.*, 499 F.3d 692 (7th Cir. 2007)................................................................... 4

*City of Los Angeles v. Heller,* 475 U.S. 796 (1986).......................................................................... 6

*Clarett v. Suroviak,* 2011 WL 37838 (N.D. Ill. 2011) ...................................................................... 8

*Cornfield by Lewis v. Consolidated High School Dist. No. 230,* 991 F.2d 1316 (7th Cir. 1993) ............. 15

*EG Milestone v. City of Monroe, Wis.,* 665 F.3d 774 (7th Cir. 2011) ................................................. 20

*Fuery v. City of Chicago,* 2015 WL 715281 (N.D. Ill. 2014) ........................................................... 19

*Harper v. Albert*, 400 F.3d 1052 (7th Cir. 2005) ........................................................................... 10

*Harris v. City of Chicago,* 2016 WL 3261522 (N.D. Ill. 2016) ...................................................... 7, 11

*Houseman v. U.S. Aviation Underwriters,* 171 F.3d 1117 (7th Cir. 1999).......................................... 4

*Jones v. City of Chicago,* 1999 WL 160228 (N.D. Ill. Mar. 10, 1999)............................................. 5, 6

*Krocka v. City of Chicago*, 203 F.3d 507 (7th Cir. 2000)............................................................... 5, 6

*Lindsey v. Orlando*, 232 F. Supp. 3d 1027 (N.D. Ill. 2017)............................................................. 10

*Matthews v. City of E. St. Louis,* 675 F.3d 703 (7th Cir. 2012) ....................................................... 6

*McNabola v. Chicago Transit Authority,* 10 F.3d 501 (7th Cir. 1993)................................................ 15

*Medina v. City of Chicago,* 100 F. Supp. 2d 893 (N.D. Ill. 2000) ........................................ 5, 12, 13

*Mitchell v. City of Chicago,* 18 C 7357 (N.D. Ill. Sept. 18, 2019)................................................... 7

*Monell v. New York Dept. of Social Services*, 436 U.S. 658 (1978) ................................................ 1

*Moore v. City of Chicago,* 2007 WL 3037121 (N.D. Ill. Oct. 15, 2007) .......................................... 17

*Ojeda-Beltran v. Lucio,* 2008 WL 2782815 (N.D. Ill. 2008)...................................................... 14, 18

*Palka v. City of Chicago,* 662 F.3d 428 (7th Cir. 2011) ................................................................ 15

*Prembaur v. City of Cincinnati,* 475 U.S. 469 (1986) .................................................................. 20

*Readus v. Dercola*, No. 09 C 4063, 2012 WL 1533167 (N.D. Ill. May 1, 2012) ............................... 9

*Smith v. Gomez,* 550 F.3d 613 (7th Cir. 2008).............................................................................. 10

*Spanish Action Committee of Chicago v. City of Chicago,* 766 F.2d 315 (7th Cir. 1985)...................... 13

*Swanigan v. City of Chicago*, 881 F.3d at 582 (7th Cir. 2018).......................................................... 14

*Taylor v. Kachiroubas*, 2013 WL 6050492 (N.D. Ill. 2013) .......................................... 8, 9, 11, 14

*Thomas v. Cook County Sheriff's Department,* 604 F.3d 293 (7th Cir. 2009).................................... 8, 9, 10

ii

*Treece v. Hochstetler*, 213 F.3d 360 (May 2000) ........................................................................ 14

*Veal v. Kachiroubas*, 2014 WL 321708 (N.D. Ill. 2014) ............................................................ passim

*Williams v. City of Chicago*, 17 C 5186, 2018 WL 2561014 (N.D. Ill. June 1, 2018) ...................... 7, 9, 13

**Statutes**

745 ILCS 10/9-102 .......................................................................................................................... 5

**Rules**

Fed. R. Civ. P. 26(d) ........................................................................................................................ 5

Defendant City of Chicago, by and through the undersigned attorneys, under Rule 42(b) of the Federal Rules of Civil Procedure, moves this Court to bifurcate Plaintiffs' §1983 claims against the City of Chicago and stay discovery and trial on those claims and, in support, states as follows:

## BACKGROUND

Plaintiffs, Roberto Almodovar and William Negron (hereinafter referred to as Plaintiffs) have sued four individual police officers (collectively referred to as "Defendant Officers"), along with the City of Chicago. Their claims stem from their arrest, prosecution and conviction for the September 1994 murders of Amy Merkes and Jorge Rodriguez, and the attempted murder of Kennelly Saez and Jackie Grande. Plaintiffs allege that Defendant Officers participated in an elaborate, premeditated scheme to frame them by manipulating the two surviving witnesses into identifying Plaintiffs as the shooters. In fact, Plaintiff Almodovar dedicates almost a dozen paragraphs of his Complaint to the elaborate tale, detailing purported conversations between Defendant Officers as well as their own internal monologue as they perpetrated the "frame up." *See, e.g., Almodovar,* Dkt. 1 at ¶¶20, 21, 45, 46, 47, 48, 55, 56.

Plaintiffs claim that Defendant Officers violated their due process rights by fabricating and concealing exculpatory evidence, conspired to deprive Plaintiffs' of their constitutional rights and failed to intervene to protect those rights. Plaintiffs also bring state law claims of malicious prosecution, intentional infliction of emotional distress and conspiracy against Defendant Officers. Against the City, Plaintiffs allege in their "Municipal Liability" claims that the constitutional violations they suffered were carried out in accordance with the City's policies, practices, as customs. Though Plaintiffs do not cite *Monell v. New York Dept. of Social Services*, 436 U.S. 658 (1978), because *Monell* sets out the criteria for the liability of municipalities, this

type of claim is generally referred to as a *Monell* claim.

According to Plaintiffs, the City's *de facto* policies included (1) manufacturing false evidence (2) coercing false statements, (3) suppressing exculpatory evidence (4) physically abusing and threatening witnesses and suspects, and (5) intentionally secreting discoverable reports in clandestine files. *See Almodovar,* at Dkt. 1, ¶¶179, 193; *Negron,* at Dkt. 1,¶¶ 95-96. Plaintiff Almodovar also alleges the City and the Chicago Police Department ("CPD") failed to investigate cases in which CPD detectives recommended charging an innocent person, failed to discipline officer misconduct, maintained and condoned a "code of silence," while both allege that CPD failed to provide adequate training. *See Almodovar,* at Dkt. 1, ¶193, *See Negron,* at Dkt. 1, ¶¶97. Plaintiff Almodovar lists at least five different subject areas in which the City allegedly failed to train its officers, including how to avoid false arrests and wrongful imprisonments, as well as how to properly conduct interrogations. *See Almodovar,* at Dkt. 1, ¶193. Both Plaintiffs also claim that all the alleged City policies were consciously approved by the City's policymakers and directly and proximately caused Plaintiffs' wrongful convictions. *See Almodovar,* at Dkt. 1, ¶¶193-195; *Negron,* Dkt. 1, ¶¶97-100.

Plaintiffs have already issued written discovery on these *Monell* allegations to the City. They are requesting, among other things, all documents related to written policies, training, and discipline on at least eight different topics. *See* Ex.1, Plaintiff Almodovar's First Requests for Production to Defendant City at ¶¶40, 41, 42, 43, 44, 45, 46; Ex. 2, Plaintiff Negron's First Request for Production to Defendant City at ¶¶14, 35, 36, 37, 38, 39, 40, 41. More recently, Plaintiff Negron issued written discovery requesting (1) all Complaint Register ("CR") Files for *all Detectives* who were assigned to Area Five during the time period of 1989-1995 and (2) *all*

Area Five homicide files from 1989 through 1995.  *See* Ex. 3, Plaintiff Negron's Third Request for Production to Defendant City.

While the City has not yet identified the precise number of files that would be responsive to these two new requests, the City can estimate, based upon its experience in other cases, that the request for CR files will likely result in the production of over a thousand files and the request for homicide files will likely result in the production of over 600 files.  The City has engaged in a Rule 37.2 discussion with both Plaintiffs in an attempt to understand Plaintiffs' requests and pinpoint what exactly they seek.  Yet, when asked to articulate the basis for such a broad request for CR files, Plaintiff Negron's counsel admitted that she in fact had no "succinct *Monell* theory on CR files."  Furthermore, neither Plaintiff was able to articulate how their request for *all* Area Five homicide files for a seven-year period of time was relevant to their *Monell* claims as pleaded.  Rather, Plaintiffs' counsel indicated that they each felt that their Complaints sufficiently laid out their *Monell* theories, and therefore, they would not narrow the requests.

Plaintiffs' *Monell* theories as alleged are vague and wide-sweeping.  The allegations in the Complaints, as well as the discovery sought, make clear that Plaintiffs intend to litigate 40 unrelated cases through this case, as well as what will likely be approximately 600 decades-old homicide investigations.  As such, the continued prosecution and defense of their *Monell* claims will almost certainly overwhelm what otherwise is a straightforward Section 1983 action against Defendant Officers, to the detriment of the parties, the Court and the judicial process.  In support of their *Monell* claims, Plaintiffs allege police officer misconduct spanning nearly two decades.  *Almodovar,* Dkt. 1, ¶¶92-134; Negron, Dkt. 1, ¶55.  Plaintiffs identify approximately 40 other individuals whom they allege were subjected to abusive interrogation techniques and/or framed

for crimes they did not commit. *Almodovar,* Dkt. 1, ¶¶92-134; Negron, Dkt. 1, ¶55. Citing a BuzzFeed article, Plaintiff Almodovar alleges that "literally dozens of other innocent men" have been framed by three of the named Defendant Officers. *Almodovar,* Dkt. 1, ¶80. In addition, Plaintiffs seek discovery on each of the 40 alleged "victims" in their discovery. *See* Ex. 1 at ¶14; Ex. 2 at ¶¶12, 45. Plaintiffs, however, must prove that their constitutional rights were violated at trial before they can establish any *Monell* liability. It is quite clear that Plaintiffs intend to use *Monell* discovery at trial to confuse the jury with allegations of abuse in unrelated cases rather than prove their own allegations of constitutional violations in their cases. The use of *Monell* discovery unfairly prejudices both the City as well as Defendant Officers.

In accordance with the common-sense, pragmatic values embodied in Rule 42(b), the City moves this Court to stay discovery and postpone trial of Plaintiffs' *Monell* claims until the resolution of the claims against Defendant Officers on the underlying constitutional violations.

## LEGAL STANDARD

Federal Rule of Civil Procedure 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." The party seeking bifurcation need only show that separating the trial would either promote judicial economy *or* prevent prejudice. *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007) (emphasis added). "Only one of these criteria - avoidance of prejudice or judicial economy - need be met before a court can order separation." *Houseman v. U.S. Aviation Underwriters,* 171 F.3d 1117, 1121 (7th Cir. 1999). Although the non-moving party's Seventh Amendment right to a jury trial must not be impaired by the decision to bifurcate or result in unfair prejudice, district courts enjoy "considerable discretion to order the bifurcations of trial." *Krocka v. City of Chicago*, 203 F.3d

507, 516 (7th Cir. 2000). Should bifurcation be warranted, Rule 26 of the Federal Rules of Civil Procedure allows the court to stay discovery on *Monell* claims. Fed. R. Civ. P. 26(d); *Jones v. City of Chicago,* 1999 WL 160228, at *3 (N.D. Ill. Mar. 10, 1999).

Motions to bifurcate *Monell* claims are frequently granted in this District because such claims typically require a significant amount of work – including expert discovery – that may ultimately be for naught because in "many if not most cases, disposition of the individual claims will either legally or practically end the litigation." *Bradford v. City of Chicago,* No. 16-CV-01663 (N.D. Ill. Oct. 16, 2019), Dkt. 182 at 5 (attached hereto as Ex. 4) (citing *Median v. City of Chicago,* 100 F. Supp. 2d 893, 895 (N.D. Ill. 2000)). If the plaintiff prevails on his constitutional claim against the municipal employee, he is "likely not to want or need to proceed any further," because Illinois law requires a "local public entity to pay … any tort judgment or settlement for compensatory damages … for which it or an employee while acting with the scope of his employment is liable." *Id.* (citing 745 ILCS 10/9-102). Accordingly, by first litigating the claims against Defendant Officers, the parties may never need to litigate the *Monell* claims, thus conserving the resources of both the parties and the court. *See, Jones,* 1999 WL 160228, at *2.

## ARGUMENT

Bifurcation of Plaintiffs' *Monell* claims best serves the Rule 42 interests of convenience, economy, expedition, and avoidance of undue prejudice; it also represents a sound exercise of the Court's inherent power to control its docket. *Krocka,* 203 F.3d at 516. Further, Defendant City would agree to an entry of judgment if Plaintiffs prevail on the underlying constitutional claims against Defendant Officers. Accordingly, bifurcation and a subsequent stay of the *Monell* claims is a sensible decision favorable to all parties.

I.   **Whether Plaintiffs Succeed or Fail On The Claims Against Defendant Officers,** *Monell* **Litigation Is Not Necessary.**

   **A.  There is no** *Monell* **liability unless Defendant Officers are found liable.**

   A plaintiff generally cannot demonstrate a municipality is liable under *Monell* without first proving that an individual employee violated a person's constitutional rights.  *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986); *Matthews v. City of E. St. Louis,* 675 F.3d 703, 709 (7th Cir. 2012) (holding that without a constitutional violation, there can be no *Monell* liability). Here, it is not possible for a jury to find *Monell* liability against the City without first finding Defendant Officers liable because of the nature of the constitutional violations alleged.  Indeed, Courts in this district have granted motions to bifurcate *Monell* claims in cases where the plaintiffs allege the same constitutional violations as Plaintiffs allege here.  *See Mitchell v. City of Chicago,* 18 C 7357 (N.D. Ill. Sept. 18, 2019) (Feinerman, J)(finding allegations of fabricated confessions required establishing individual liability against the individual officers) (attached hereto as Ex. 5); *Williams v. City of Chicago*, 17 C 5186, 2018 WL 2561014, at *11 (N.D. Ill. June 1, 2018) (finding coerced testimony, false reports, and withholding evidence in files depends on individual officer actions); *Harris v. City of Chicago,* 2016 WL 3261522 (N.D. Ill. 2016) (Darrah, J) (finding the alleged *de facto* polices regarding coercive interrogations, fabricating evidence, failure to train, and code of silence depended on the individual officers' actions); *Andersen v. City of Chicago*, 16 C 1963, 2016 WL 7240765, at *4 (N.D. Ill. Dec. 14, 2016) (finding the City's alleged practice of maintaining clandestine files could only manifest itself if the defendant officers maintained such files); *Veal v. Kachiroubas*, 2014 WL 321708, at *3 (N.D. Ill. 2014) (municipal liability in case alleging falsification of evidence depends on establishing individual defendant officers violated plaintiff's civil rights); *see also Taylor v. Kachiroubas*, 2013 WL 6050492, at *4-5 (N.D. Ill. 2013) (same); *Clarett v. Suroviak,* 2011 WL

37838, at *2 (N.D. Ill. 2011) (municipal liability in suit alleging false arrest and unreasonable seizure depends on establishing individual defendants violated plaintiff's constitutional rights).[1] In fact, recently, in a case involving many of the same Defendants, the same alleged constitutional violations, and nearly identical City policy allegations as this case, Judge Shah ruled that all the constitutional violations alleged by the plaintiffs required culpability by the individual officers. (*See* Transcript, Ruling on Motion to Bifurcate, March 19, 2019, *Montanez v. Guevara* (No. 17-cv-4560), *Serrano v. Guevara* (17-cv-2869) (attached hereto as Exhibit 6)).

While the Seventh Circuit has recognized limited circumstances in which a verdict in favor of individual defendants would not necessarily be inconsistent with a plaintiff's verdict on a factually distinct *Monell* claim, those unique circumstances are not present here. *See, e.g., Thomas v. Cook County Sheriff's Department,* 604 F.3d 293 (7th Cir. 2009). In determining whether *Monell* liability can stand absent a finding of individual liability, *Thomas* instructs the relevant factors to consider are "[1] the nature of the constitutional violation, [2] the theory of municipal liability, and [3] the defenses set forth." *See Thomas,* 604 F.3d at 305, *see also Veal*, 2014 WL 321708, at *3; *Readus v. Dercola*, No. 09 C 4063, 2012 WL 1533167, at *2 (N.D. Ill. May 1, 2012). Those factors weigh in favor of bifurcation here.

First, Plaintiffs' *Monell* claims are wholly derivative of the alleged constitutional violations committed by Defendant Officers. For instance, claims like, the City allegedly had a *de facto* policy of fabricating evidence, cannot be sustained unless it is determined that Defendant Officers fabricated evidence in violation of Plaintiffs' due process rights. Likewise, whether the City had a lax disciplinary system is inconsequential unless Defendant Officers committed some unconstitutional misconduct in this case. None of these *Monell* claims are

---

[1] *See also Arrington v. City of Chicago,* 2018 WL 3861552, at *1 (N.D. Ill. Aug. 14, 2018) (finding "judicial economy weighs in favor of bifurcation" in an excessive force case); *Ackerman v. Allen,* 2017 WL 1536447 (N.D. Ill. 2017) (Castillo, CJ.).

viable unless the jury first finds that Defendant Officers violated Plaintiffs' constitutional rights. Thus, unlike *Thomas*, even if the City had the policies and practices Plaintiffs allege, like fabricating and manipulating witness testimony, or withholding exculpatory evidence, "the harm caused by the practice could only manifest itself through the officers' actions." *See Williams*, 2018 WL 2561014, at *11; *see also* Ex. 6, *Montanez* at 6 ("If the individual defendants put exculpatory evidence in a street file, but did nothing to disclose it to the prosecutors, they violated *Brady*, even if the City's practice of failing to disclose street files and City's practice of having insufficient or ineffective subpoena compliance also caused the non-disclosure"); *Taylor*, 2013 WL 6050492, at *4 ("the actions of the individual officers in collecting and fabricating evidence against [plaintiffs] are the source of the alleged harm to the plaintiffs, and any 'policy' exerted harm through those actions, not independently of them").

As for the defenses, Defendant Officers will argue no such constitutional violations occurred, and the City will argue no such *de facto* policies existed. Because the constitutional violations Plaintiffs allege are not dependent on Defendant Officers' subjective mental state, they do not leave open the possibility for the same types of defenses that were successful for the individuals in *Thomas*. *See Lindsey v. Orlando*, 232 F. Supp. 3d 1027, 1037 (N.D. Ill. 2017) (reasoning that in *Thomas*, as well as other cases where the court denied bifurcation, the claims alleged required an analysis as to the defendant's state of mind; "here, the constitutional violation occurs regardless of the mental state of the officers").[2] As a result, there is no defense foreseeable in this case that cuts against bifurcation.

---

[2] Plaintiffs' other Section 1983 claims, Failure to Intervene and Conspiracy, are all derivative and contingent upon a finding that one of the Defendant Officers violated Plaintiffs' constitutional rights. *See Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) (failure to intervene); *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) (conspiracy).

Any concern regarding Defendant Officers' assertion of the qualified immunity defense is addressed by the City's Limited Consent to Entry of Judgment, which allows judgment to be entered against the City in the event of a finding that any of the Defendant Officers violated Plaintiffs' constitutional rights but are nonetheless entitled to qualified immunity. (*See*, Limited Consent to Entry of Judgment, attached hereto as Ex. 7). In other words, the success of the qualified immunity defense would not act to bar Plaintiffs' recovery of compensatory damages on the constitutional claims, nor would it require a second trial on the *Monell* claim. *See infra, Section B;* s*ee e.g.*, *Castillo v. City of Chicago*, No. 11 C 7359, 2012 WL 1658350, at *5 (N.D. Ill. May 11, 2012) (bifurcating discovery and trial on *Monell* claim because municipality agreed to pay damages if any of the defendant officers violated plaintiff's constitutional rights or if the defendant officers prevailed based on a qualified immunity defense).

Because there is no way that a jury could find the City liable without first finding Defendant Officers liable, this factor weighs in favor of bifurcation. *See*, Ex. 5, *Mitchell,* at. 1; Ex.6 *Montanez,* at p. 6-7; at *Andersen,* 2016 WL 7240765, at *3; *Harris,* 2016 WL 3261522, at *3; *Veal,* 2014 WL 321708, at *3; *Taylor,* 2013 WL 6050492, at *4.

**B. The City's Indemnification of Defendant Officers and Consent Judgment obviates the need for any further proceedings if Plaintiffs prevail against the Defendant Officers.**

If, on the other hand, Defendant Officers are found to have violated Plaintiffs' constitutional rights, bifurcation of Plaintiffs' Monell claims will not affect either Plaintiffs' recovery of any compensatory damages that a jury may award him. First, the City will consent to entry of a judgment against it for the amount of damages caused by the violation, plus reasonable attorneys' fees, without requiring Plaintiffs to prove the elements of Section 1983 for municipal liability. *See,* Ex.7 at ¶ 4. This is no small benefit to Plaintiffs, as "the decision of a

plaintiff to pursue a *Monell* claim carries with it a heavy burden of … proof." *Medina,* 100 F. Supp. 2d at 894. The stipulation allows Plaintiffs to obtain a judgment against the City for all the compensatory damages to which they are entitled, as long as they prove their constitutional rights were violated, thereby avoiding altogether litigation of the *Monell* claim. This would be true even if Defendant Officers successfully asserted a qualified immunity defense on the grounds that the offending conduct did not violate a clearly established right. *See,* Ex. 7.

Thus, given the provisions of the Consent Judgment, "disposition of the individual claims will either legally or practically end the litigation … [i]f the plaintiff prevails against the officer on his Section 1983 claim, he is likely not to want or need to proceed any further …" *Medina,* 100 F. Supp. 2d at 895. To the extent that a successful *Monell* claim serves to ensure payment of damages to Plaintiffs, as appropriate, the Consent Judgment achieves that goal.

As Judge Tharp noted in *Kitchen,* "[t]the express premise of the City's motion is not that the *Monell* claim will necessarily fall by the wayside, but that there is a good chance that it may – either because the individual defendants are found not to have violated plaintiff's rights, or if they are found to have done so, because the plaintiff concludes that the verdict, and the accompanying damage award, are sufficient after all." *Kitchen v. Burge,* No. 10-CV-4093, Dkt. 399 at 13 (attached hereto as Ex. 8).

The City has both a statutory and a contractual obligation to indemnify Defendant Officers for any judgment against them, and as a matter of law, if Plaintiffs are awarded damages against Defendant Officers, Plaintiffs are not entitled to any additional recovery of compensatory damages against the City, even if they are successful in proving *Monell* liability. *See,* 745 ILCS 10/9-102; *see also Spanish Action Committee of Chicago v. City of Chicago,* 766 F.2d 315, 321 (7th Cir. 1985); *Medina,* 100 F. Supp. At 895-96 ('from an economic standpoint, a prevailing

10

plaintiff in a Section 1983 excessive force case against police officers in Illinois gets nothing more from suing the municipality under *Monell* than he would get from suing just the officers … [a]s a result, plaintiffs generally chose to forego the more difficult route of seeking to hold the municipality liable under *Monell*"). Thus, Plaintiffs have no economic incentive to proceed against the City.

Moreover, any argument that there are non-monetary benefits to pursuing *Monell* claims are not persuasive here. Though frequently plaintiffs claim that they are pursuing *Monell* claims for policy changes, Plaintiffs are not seeking any equitable relief, such as an injunction. *See* Ex. 6, *Montanez*, at 8. Moreover, the alleged policies at issue in this case are decades old, and many changes have occurred in the intervening years. And, without any actual relief to be had, Plaintiffs pursuing *Monell* claims like these "does not justify the time and expense of litigating them when the City will make Plaintiffs whole and accept judgment against it if their rights were violated." *Id.* at 8-9. Thus, any purported non-economic benefits to pursuing Plaintiffs' *Monell* claims do not tip the balance against bifurcation. *See Williams*, 2018 WL 2561014, *14 (a large judgment against the officers would presumably send the same message to the City to deter future official misconduct).

## II. Bifurcation Will Promote Efficiency and Judicial Economy.

With virtually no added benefit to litigating the *Monell* claims, the extreme and unnecessary burden *Monell* discovery places on the City and the Court further supports bifurcation and a stay of discovery and trial. *See Veal*, 2014 WL 321708, at *5; *Taylor,* 2013 WL 6050492, at *3; *Ojeda-Beltran v. Lucio,* 2008 WL 2782815, at *2 (N.D. Ill. 2008). Proving municipal liability claims can be "extensive and expensive," *Taylor,* 2013 WL 6050492, at *3, which has led to the "willingness of many judges to grant [motions to bifurcate *Monell* claims]."

*Veal*, 2014 WL 321708, at * 5 (citations omitted). The Seventh Circuit has explicitly endorsed bifurcation as a means to avoid "the waste of the valuable time and resources of the court," as well as serving the interests furthered by Rule 42(b). *See Treece v. Hochstetler*, 213 F.3d 360, 365 (May 2000). This is particularly true considering Plaintiffs cannot recover additional damages by succeeding on their *Monell* claims. *See Swanigan v. City of Chicago*, 881 F.3d at 582 (7th Cir. 2018) (A §1983 plaintiff cannot recover from the City after being compensated for that constitutional violation against the officers because federal common law prevents §1983 plaintiffs from recovering twice for the same injury). As Judge Shah reasoned, "just because plaintiffs can resort to Section 1983 and *Monell* liability doesn't mean that that theory is always a good use of resources. Rules 1 and 42 contemplate that courts should try to bring costs and time down", and *Monell* discovery is likely to be "contentious" and "time-consuming." *See* Ex. 6, *Montanez*, at 9.

Plaintiffs' requests to produce and interrogatories demonstrate the breath of the *Monell* discovery Plaintiffs consider relevant. As mentioned above, Plaintiffs have requested documents and information related to policies, procedures, general orders, training, and employee manuals about topic such as documenting developments in an investigation, conducting and memorializing lineups, writing police reports, disclosing exculpatory evidence, reporting, investigating and officer misconduct. Plaintiffs have alleged numerous policies and practices of the City as the cause of their purported constitutional injuries Dkt. 1, ¶178-188; *Negron,* Dkt. ¶¶95-100. To prevail against the City, Plaintiff must adduce evidence that these alleged municipal policies and practices were enduring, widespread practices that violated constitutional rights in a systematic manner. *See Cornfield by Lewis v. Consolidated High School Dist. No. 230,* 991 F.2d 1316, 1326 (7th Cir. 1993); *McNabola v. Chicago Transit Authority,* 10 F.3d 501,

511 (7th Cir. 1993). In addition, Plaintiff must establish that the City's final policymaker was deliberately indifferent to the various deficient municipal practices alleged by Plaintiff – a demanding task *See Palka v. City of Chicago,* 662 F.3d 428, 434 (7th Cir. 2011)(requiring notice and "tacit approval" of the unconstitutional practice.)

The discovery necessary to adjudicate Plaintiffs' claims against Defendant Officers will be miniscule compared to the volume of discovery that would be necessary to prepare Plaintiffs' *Monell* claim for trial. Plaintiffs' wide ranging and often not relevant (to the facts of this case) *initial* discovery requests to the City seek literally thousands of documents and propound numerous interrogatories. *See,* Ex. 1-3. For example, Plaintiffs' discovery requests seek "all policies, procedures, general orders, special orders, directives, Standard Operating Procedures and/or employee manuals of the Chicago Police Department" regarding subjects such as conducting investigations, making arrests, search warrants, processing evidence, taking statements, and conducting line ups. The requests also seek "the contents of any training" that was provided to CPD employees between "the date of first hire of any of the Defendant police officers and 2004" regarding subjects like disclosing evidence to the Cook County State's Attorney's Office, memorializing information about a criminal investigation in police documents, and maintaining police files. (*See,* Ex. 2 at ¶¶35, 41; Ex. 1 at ¶¶ 40, 46).

These written discovery requests are only the beginning. Plaintiff Negron's recent discovery seeks both CR files and homicide files for a seven-year period of time. The City's best estimate is that this request will likely require the production of over one thousand CR files and 600 homicide files. With respect to the homicide files, that will likely result in the reinvestigation of 600 decades-old homicide investigations. Plaintiffs have also indicated through their discovery requests that they will seek depositions of both current and former high-

13

ranking personnel of CPD. (*See,* Ex. 2 at ¶39; Ex. 1 at ¶44) (seeking documents that "identify" "policymaker or policymakers" who were responsible for the litany of policies and or practices identified by Plaintiffs for an unspecified period of time.) Those personnel will likely include Rule 30(b)(6) witnesses from various divisions within CPD such as the Bureau of Internal Affairs, Office of the Superintendent and others. Even more, as is common in *Monell* litigation, costly expert discovery will invariably follow fact discovery with both Plaintiffs and the City retaining expert witnesses. This will generate numerous lengthy reports and depositions, thereby causing all parties to incur additional costs and further delay in this case. *See Moore v. City of Chicago,* 2007 WL 3037121, at *2 (N.D. Ill. Oct. 15, 2007).

*Monell* discovery is time-consuming, costly, and as explained further above, because the *Monell* litigation provides no further tangible benefit to Plaintiffs, incredibly wasteful. By way of example, the City has conducted *Monell* discovery and trials in two recent cases involving similar *Monell* claims as those alleged here. In *Fields, Monell* discovery of homicide investigative files *alone* took about 17 months at a cost in excess of $1,500,000.00. *See* City's Response to Plaintiff's Motion to Compel *Monell* Discovery in *Prince v. Kato,* at 5-6 (attached hereto as Exhibit 9). Similarly, in *Rivera, Monell* discovery added at least a year to the discovery at a cost in excess of $1.1 million. *See* City's Response Position Regarding *Monell* Discovery in *Sierra v. Guevara,* at 9-10 (attached hereto as Exhibit 10)[3]. And, plaintiffs in those cases did not pursue *Monell* discovery related to any failure to supervise and discipline – specifically, those plaintiffs did not request years of CR files for non-defendant police officers.[4]

---

[3] This Court has firsthand knowledge from overseeing the discovery in *Sierra v. Guevara, et al.,* 18 C 3029, the complexity of conducting *Monell* discovery and how the *Monell* discovery dwarfs and overwhelms fact discovery related to the underlying case.

[4] In fact, to date, the only case that the City's counsel is aware of where the Court has ordered the City to produce the number of CR files contemplated in Plaintiffs' requests is the consolidated case of *Hood v. City of Chicago,* N.D. Ill. 16-CV-1970 *and Washington v. City of Chicago,* N.D. Ill. 16-CV-1893. In that

Considering the broad *Monell* allegations in Plaintiffs' Complaints, bifurcation is particularly well-suited in this case. The potential discovery related to each of these various topics is extensive and goes back decades. Putting aside the questionable merit to many of these alleged *Monell* issues, the number and type of documents that arguably fall within the scope of the discovery will be unduly burdensome and preparing responses will be expensive and time-consuming. *See* Ex. 6, *Montanez*, at 5-6 (finding that granting bifurcation will expedite and economize the cases); *Ojeda-Beltran*, 2008 WL 2782815, at *3 ("[L]itigation of the *Monell* claim is likely to require a considerable investment of resources on the part of the parties and the Court outside of those required for the resolution of the claims against Defendant Officers. We find it prudent to resolve the claims against Defendant Officers before engaging in costly and time-consuming litigation of the *Monell* claim.").

Quite simply, considering that discovery on these claims may ultimately be unnecessary to resolve Plaintiffs' claims, there is no reason to burden the parties with litigating such exhaustive discovery and conducting a potentially unnecessarily long trial.

**III.    Bifurcation Will Prevent Undue Prejudice to Defendants.**

A single trial of the claims against Defendant Officers along with the *Monell* claims against the City will severely prejudice all Defendants, while bifurcation of the *Monell* claim protects all Defendants from the inevitable prejudice caused by the introduction at trial of evidence relating to numerous of alleged police misconduct that are not related to Plaintiff's case. "Plainly, the presentation of evidence relating to the wide-ranging allegations of the plaintiff's *Monell* claim create[s] a substantial risk of prejudice for the individual defendants and

---

case, it has taken the City nearly a year to produce over 1000 CR files. Moreover, the burden is not limited to scanning the documents, as the City's attorneys must review and analyze each file. To date, this process has cost the City almost $95,000.00 to simply copy, redact and produce the files, with costs only continuing to accrue as the case moves through expert discovery and trial.

undermines the ability of those defendants to receive a fair trial." *See* Ex. 8, *Kitchen v. Burge,* No. 10-CV-4093, Dkt. 399 at 13.

It is abundantly clear that Plaintiffs intend to try this case by drawing the jury's attention away from the facts and circumstances of the witness identifications that lie at the heart of Plaintiffs' claims and distracting the jury by presenting evidence of alleged police misconduct in other cases. This presentation of broad evidence of the City's alleged customs and practices would be unduly prejudicial and would likely cause significant juror confusion. Accordingly, Plaintiffs' *Monell* claims should be bifurcated from his other claims. *See,* Ex. 5, *Mitchell,* at 2; *Fuery v. City of Chicago,* 2015 WL 715281, at *3 (N.D. Ill. 2014)(bifurcating *Monell* claim that would "draw the jury's attention away from resolving the underlying issues of an incident that occurred over seven years ago" and "make the case more complicated and potentially cause juror confusion"); *Veal,* 2014 WL 321708, at *6 ("Presenting evidence to the jury regarding a village-wide policy, practice or custom involving multiple improper police actions poses a danger of undue prejudice to the defendant officers by creating a perception that the police department routinely acts improperly, even if those officers acted properly in this case."); *see also,* Exhibit 8, *Kitchen,* at 13-14 (granting bifurcation and reasoning that it would "ensure that the individual defendants are not prejudiced unfairly by the presentation of evidence that does not relate to the violations that are alleged to have been committed.")

Moreover, there is a heightened risk of prejudice against the City if the claims are tried with a single trial. *Monell* and its progeny provide plaintiffs with a vehicle to hold a municipality liable for its own conduct; it is not a means by which to hold a municipality liable through a form of vicarious liability like *respondeat superior. EG Milestone v. City of Monroe, Wis.,* 665 F.3d 774, 780 (7th Cir. 2011)("There is no *respondeat superior* liability under Section

16

1983; the Supreme Court 'distinguish[es] acts of the *municipality* from acts of the *employees* of the  municipality.'" (quoting *Prembaur v. City of Cincinnati,* 475 U.S. 469, 479(1986))).  A jury asked to weigh evidence of individual employee misconduct and policy evidence may conflate the  broad  evidence  on  *Monell*  liability  as  proof  of  the  City's  derivative  liability  under  a *respondeat superior* theory.  The claims against Defendant Officers here are largely fact-specific, while the claims against the City are highly complex and intricate requiring due consideration. The serious allegations against Defendant Officers, if proven at trial, may cause the jury to hold the City liable on the *Monell* claim without giving the claim due deliberation and contemplation. This risk of unfair prejudice is easily avoidable by bifurcating the *Monell* claims from the claims against Defendant Officers', ensuring that there would be no concern about misapplication of the law to the available evidence.  In fact, just recently, the Honorable Judge Durkin found the risks that *"Monell* would devolve into a *respondeat superior claim"* to not only be "compelling" but one that "counsels in favor of bifurcation."  Ex. 4, *Bradford,* at 8-9.

## CONCLUSION

WHEREFORE, Defendant City respectfully requests this Court to grant this Motion to bifurcate Plaintiffs' §1983 *Monell* claims against the City of Chicago and stay both discovery and trial on the *Monell* claims; and any other relief this court deems just.

Dated:  November 15, 2019

Respectfully Submitted,
CITY OF CHICAGO,

By:     */s/ Eileen E. Rosen*
          One of its Attorneys

Eileen E. Rosen, No. 06217428
Catherine M. Barber
Theresa B. Carney
Rock Fusco & Connelly, LLC
321 N. Clark St., Suite 2200
Chicago, Illinois 60654
(312) 494-1000
erosen@rfclaw.com

17