IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERTO ALMODOVAR, JR., ) | |
| ) | |
| Plaintiff, ) | No. 18-cv-2341 |
| ) | |
| v. ) | Judge Jeffrey I. Cummings |
| ) | |
| REYNALDO GUEVARA, et al. ) | |
| ) | |
| Defendants. ) | |

| | |
|---|---|
| WILLIAM NEGRON, ) | |
| ) | |
| Plaintiff, ) | No. 18-cv-2701 |
| ) | |
| v. ) | Judge Jeffrey I. Cummings |
| ) | |
| REYNALDO GUEVARA, et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

Following their exoneration, wrongfully convicted plaintiffs Roberto Almodovar and William Negron[1] each brought suit against Reynaldo Guevara, Ernest Halvorsen, Mark Olszewski, and the City of Chicago alleging federal and state law claims, including that defendants violated, and conspired to violate, their constitutional rights. Olszewski has since moved for summary judgment in both cases. (Almodovar Dckt. #207; Negron Dckt. #193).

---

[1] Defendant Halvorsen is now deceased and was substituted as a party-defendant by his surviving spouse. (Almodovar Dckt. #81; Negron Dckt. #82). The Court references Halvorsen as the party-defendant throughout this Memorandum Opinion and Order.

1

In essence, Olszewski's motions focus on whether plaintiffs have presented sufficient evidence to show that he was personally involved in a conspiracy with detectives Guevera and Halvorsen to violate plaintiffs' constitutional rights under Section 1983. Specifically, the record shows that Olszewski provided a previously taken photograph of Almodovar from an unrelated arrest to defendant detectives, and that he provided a previously taken photograph of Negron from a different unrelated encounter to non-defendant officers, who in turn provided it to defendant detectives. Is this evidence (along with the other evidence presented by plaintiffs) sufficient to raise a genuine dispute of material fact as to whether Olszewski was personally involved in a conspiracy with defendant detectives to violate plaintiffs' constitutional rights? The Court finds that it is not. Without sufficient evidence of Olszewski's involvement in a conspiracy, there is insufficient evidence to raise a genuine dispute of fact as to whether he was personally involved in the federal constitutional violations that plaintiffs assert. Thus, for the reasons set forth below, Olszewski's motions for summary judgment are granted on plaintiffs' federal claims and the Court relinquishes jurisdiction as to plaintiffs' state law claims against him.

## I. LEGAL STANDARD

Summary judgment is appropriate when the moving party shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A genuine dispute is present if a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might bear on the outcome of the case." *Wayland v. OSF Healthcare Sys.*, 94 F.4th 654, 657 (7th Cir. 2024); *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 584 (7th Cir. 2021) (the existence of a factual dispute between the parties will not preclude summary judgment unless it is a genuine

dispute as to a material fact); *Hottenroth v. Vill. of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004) (issues of material fact are material if they are outcome determinative).

When the moving party has met that burden, the non-moving party cannot rely on mere conclusions and allegations to concoct factual issues. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Instead, it must "marshal and present the court with the evidence [it] contends will prove [its] case." *Goodman v. Nat. Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). To determine whether a genuine issue of material fact exists, all facts and reasonable inferences must be drawn in the light most favorable to the non-moving party. *King v. Hendricks Cty. Commissioners*, 954 F.3d 981, 984 (7th Cir. 2020). Summary judgment is granted only if "no reasonable trier of fact could find in favor of the non-moving party." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012) (cleaned up).

## II.  FACTUAL RECORD

The Court draws the factual record from:

- the parties' pleadings;

- Olszewski's Local Rule 56.1 statement of material facts in the *Almodovar* matter ("DSOF") (Dckt. #209)[2] and accompanying exhibits (Dckt. #209-1 to #209-44);

- Plaintiffs' joint Rule 56.1 statement in opposition to DSOF ("DSOF Resp.") (Dckt. #230);

- Plaintiffs' Rule 56.1 statement of additional facts in the *Almodovar* matter ("PSAF") (Dckt. #229) and accompanying exhibits (Dckt. #229-1 to #229-26);

- Olszewski's response to PSAF ("PSAF Resp.") (Dckt. #242) and accompanying exhibit (Dckt. #242-1);

- Olszewski's Local Rule 56.1 statement of material facts in the *Negron* matter ("Negron DSOF") (Negron Dckt. #195) and accompanying exhibits (Negron Dckt. #195-1 to 195-44);

---

[2] Unless indicated otherwise, all docket entries refer to the docket for *Almodovar Jr. v. Guevara, et al.*, No. 18-cv-2341.

- Plaintiffs' joint Rule 56.1 statement in opposition to Negron DSOF (Negron Dckt. #216) and accompanying exhibits (Negron Dckt. #213 to #213-25);

- Plaintiffs' Rule 56.1 statement of additional facts in the *Negron* matter ("Negron PSAF") (Negron Dckt. #217); and

- Olszewski's response to Negron PSAF ("Negron PSAF Resp.") (Dckt. #226); and accompanying exhibits (Dckt. #226-1 to #226-3).

The following facts are undisputed unless otherwise noted.

Plaintiffs Roberto Almodovar ("Almodovar") and William Negron ("Negron") were arrested, prosecuted, and convicted of the murders of Jorge Rodriguez ("Rodriguez") and Amy Merkes ("Merkes"), and the attempted murders of Jackie Grande ("Grande") and Kennelly Saez ("Saez"). (DSOF Resp. ¶3). At all times relevant to this matter, defendant Mark Olszewski ("Olszewski") was a tactical officer with the Chicago Police Department, (*id.* ¶4), assigned to an eight-man tactical gang team in the 25th District. (PSAF Resp. ¶1). At all times relevant to this matter, defendants Reynaldo Guevara ("Guevara") and Ernest Halvorsen ("Halvorsen") were detectives with the Chicago Police Department. (DSOF Resp. ¶¶5–6).

Almodovar testified that he was a member of the Insane Dragons gang until the end of 1993 or beginning of 1994. (Dckt. #229-2 at 11). Negron similarly testified he was a member of the Insane Dragons prior to his 1994 arrest. (Dckt. #209-23 at 8).

### A. Contact Between Plaintiffs and Olszewski Prior to August 30, 1994

Almodovar encountered Olszewski several times prior to his arrests that are central to this matter. (PSAF Resp. ¶¶2–6). The first encounter occurred in 1993, as Almodovar headed to his cousin's house in the Sayre Park area of Chicago. (*Id.* ¶2). Olszewski drove up to Almodovar and asked him where he was from. (*Id.*). When Almodovar informed Olszewski that

4

he was from Humboldt Park, Olszewski told Almodovar, "take your spic-ass back to Humboldt Park. You aren't going to mess up my neighborhood." (*Id.*).

Almodovar and Olszewski encountered each other again in August 1993, when Olszewski confronted Almodovar in a Burger King and accused him of putting graffiti on the property. (*Id.* ¶4). Olszewski arrested Almodovar, and charged Almodovar with "damage to property," but the case was dismissed. (*Id.*). Prior to September 1, 1994, Olszewski and/or other 25th District officers arrested Almodovar at least a couple of times. (*Id.* ¶11).

### B. Olszewski Arrests Negron in Mid-August 1994 and Takes His Photo

Negron contends that he first encountered Olszewski in mid-August 1994 when Olszewski pulled him over, but did not arrest him. (Negron PSAF Resp. ¶4; Dckt. #213-2 at 42). Olszewski then directed Negron to go to the police station and photographed him there. (Negron PSAF Resp. ¶4).

### C. Homicides on August 30, 1994 and September 1, 1994

On August 30, 1994, Carlos Olan, a member of the Insane Dragons gang, was killed in a drive-by gang shooting. (DSOF Resp. ¶9). In the early morning hours of September 1, 1994, Merkes and her friend Grande were visiting the apartment of Merkes' boyfriend, Saez. (*Id.* ¶11). They were joined by Saez's cousin, Rodriguez. (*Id.*). Shortly after midnight, a car drove past the apartment building carrying three occupants. (*Id.* ¶13). Gunshots were fired from the car. (*Id.* ¶14). Merkes was shot and pronounced dead at the scene. (*Id.*). Rodriguez was shot and died at the hospital. (*Id.*). Grande was shot and hospitalized but survived. (*Id.*). Saez dove behind a nearby parked car and was not struck. (*Id.*). In the late afternoon of September 1, 1994, Guevara and Halvorsen were assigned to investigate the Merkes/Rodriguez homicides and the Olan homicide. (*Id.* ¶16).

### D. Olszewski Arrests Almodovar on September 4, 1994 and Takes His Photo

On September 4, 1994, Olszewski and others arrested Almodovar, his cousin (Sergio Almodovar ("Sergio")), and two other individuals at a property on N. Rutherford. (*Id.* ¶18). The parties disagree as to what prompted the raid on the Rutherford property; however, it is undisputed that Sergio was charged with possession of a sawed-off shotgun and that Almodovar and the other two individuals were arrested and charged with "mob action." (*Id.*). Olszewski took Polaroid photos of the arrestees, including Almodovar, at the 25th District located at Grand and Central on the evening of the arrest. (*Id.* ¶18; Dckt. #229-2 at 24). It was Olszewski's usual practice to take Polaroid photographs of all gang arrestees during their processing at the station to compile intelligence about gangs and assist other officers. (DSOF Resp. ¶18).[3]

### E. Olszewski Provides Guevara and Halvorsen with Almodovar's Photo After Almodovar's September 4, 1994 Arrest

At some point after the Rutherford arrest of Almodovar on September 4, 1994, but prior to their conversation with an eyewitness of the Merkes/Rodriguez homicide on September 5, 1994, Halvorsen and/or Guevara went to the 25th District office seeking information about the Insane Dragons. (Dckt. #229-5 at 39; Dckt. #229-11 at 6). The detectives were directed to Olszewski, who provided them with the Polaroids he had taken during the September 4, 1994 arrest, including Almodovar's photo. (Dckt. #229-5 at 39, 49; Dckt. #229-11 at 7). Other than this interaction, Olszewski did not speak to Guevara or Halvorsen about the murders that occurred on September 1, 1994. (Dckt. #229-5 at 52). It is undisputed that Olszewski did not provide Negron's photograph to either Guevara or Halvorsen, (Negron Dckt. #226 at 6). Instead,

---

[3] Almodovar's effort to dispute this fact is ineffectual because he relies on the allegations of his amended complaint (which are not evidence) and portions of Olszewski's deposition that are not in conflict with the asserted fact. (*see* DSOF Resp. ¶18).

6

the detectives obtained Negron's photo from Chicago Police Department Crime Specialists Joe Rodriguez and Ed Wiora. (DSOF Resp. ¶20).

### F. Guevara and Halvorsen Arrest Almodovar and Negron

On September 5, 1994, Grande was released from the hospital and Guevara went to her home to show her photos of certain individuals. (DSOF Resp. ¶22). It is Olszewski's position that upon viewing the photo array, Grande identified Almodovar as the person from the back seat of the car that fired the gun, and Negron as the person who drove the car and also fired a gun. (Dckt. #209-24 at 27).[4]

Almodovar and Negron were arrested on September 11 and 12, 1994, respectively. (DSOF Resp. ¶24). On September 12, 1994, Grande and Saez separately viewed a live line-up in which both Almodovar and Negron were participants. (*Id.* ¶25). Both Grande and Saez identified Almodovar and Negron as the perpetrators. (*Id.*). Almodovar and Negron were both

---

[4] Plaintiffs attempt to dispute this fact based on Guevara's deposition testimony where he invoked the Fifth Amendment and refused to answer questions. (Dckt. #229-6 at 26). Although "'constitutionally protected, a civil litigant's invocation of the privilege against self-incrimination during the discovery process is far from costless.'" *Aim Recycling of Fla., LLC v. Metals USA, Inc.*, No. 18-CV-60292, 2020 WL 209860, at *8 (S.D. Fla. Jan. 13, 2020), *quoting United States v. Certain Real Prop. & Premises Known as 4003-4005 5th Ave.,* 55 F.3d 78, 82 (2d Cir. 1995). As the Seventh Circuit has acknowledged, "[t]he rule that adverse inferences may be drawn from Fifth Amendment silence in civil proceedings has been widely recognized by the circuit courts of appeals, including our own . . ." *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 390 (7th Cir. 1995) (citing cases).

By relying on Guevara's invocation of the Fifth Amendment to contest Olszewski's factual assertion, plaintiffs seem to implicitly urge this Court to draw an adverse inference against Olszewski based on Guevara's use of his privilege against self-incrimination. Without imputing Guevara's conduct to Olszewski, Guevara's non-answers are simply non-answers as far as Olszewski is concerned and it does not provide plaintiffs with any evidentiary basis to challenge Olszewski's factual assertion. Although one party's invocation of the Fifth Amendment can be imputed to another party where it is "show[n] that the circumstances of the particular case justify the imputation of the negative inference," (*see LiButti v. United States*, 107 F.3d 110, 122 (2d Cir. 1997)), plaintiffs have not even attempted to make the requisite showing here, and the Court will not develop such an argument for them. Accordingly, because the Court finds that the evidence cited by plaintiffs does not support their denial of this proffered fact, it is deemed admitted. *See* N.D.Ill. Local Rule 56.1(b)(3).

subsequently charged, indicted, and found guilty of the first-degree murders of Merkes and Rodriguez, and the attempted first-degree murders of Grande and Saez. (*Id.* ¶¶25, 32).

It is undisputed that Olszewski did not: (1) show any photos to Grande or Saez, (*id.* ¶38); (2) arrest Almodovar or Negron for the Merkes/Rodriguez homicides, (*id.* ¶40); (3) interact with Grande or Saez, (*id.* ¶37); (4) prepare any police reports related to the Merkes/Rodriguez homicides, (*id.* ¶35);[5] (5) interact with the prosecutors regarding the charging and prosecution of Almodovar and Negron, (*id.* ¶41); or (6) testify at Almodovar or Negron's underlying criminal trials and post-conviction proceedings, (*id.* ¶¶42–43).

### G. Alleged Interaction Between Almodovar and Olszewski After Almodovar's Arrest on September 12, 1994

After Almodovar was identified by Grande and Saez, officers informed him that he was being formally charged with the Merkes/Rodriguez murders. (PSAF Resp. ¶31). While Almodovar was still in an interview room after being told he would be charged, Olszewski opened the door of the room, stuck his head in and laughed, telling Almodovar, "got you." (*Id.*).

## III. DISCUSSION

Olszewski moves for summary judgment on each of the federal and state claims lodged against him on the grounds that plaintiffs cannot demonstrate he was personally involved in culpable conduct that warrants holding him civilly liable. *See e.g.*, *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) (stating to be liable for any claim under Section 1983, a defendant must be "personally responsible" for the alleged deprivation of the plaintiffs' constitutional rights).

---

[5] Plaintiffs dispute this fact based on their contention that Olszewski prepared an arrest report related to the September 4, 1994 arrest at Rutherford, which was contained in the investigative file for the Merkes/Rodriguez homicides. (DSOF Resp. ¶35 (citing Dckt. #229-19)). The arrest report does not specifically mention the Merkes/Rodriguez homicides, and instead, summarily states "the Dragons are currently at war with the [Latin] Disciples with numerous shootings in the past week." (Dckt. #229-19 at 2). The Court finds that the evidence cited by plaintiffs does not support their denial of the proffered fact, and it is therefore deemed admitted. *See* N.D.Ill. Local Rule 56.1(b)(3).

Given that the Court's jurisdiction over plaintiffs' state law claims against Olszewski hinges on the viability of their federal claims, the Court begins with plaintiffs' federal claims. For the reasons set forth below, the Court finds that plaintiffs' federal claims against Olszewski cannot survive summary judgment and relinquishes jurisdiction over plaintiffs' state-law claims against Olszewski.

### A. Plaintiffs Fail to Point to Sufficient Evidence to Support Their Fabrication and Conspiracy Claims.

Plaintiffs contend that a reasonable jury could find Olszewski violated their rights by conducting a pretextual arrest of Almodovar at the Rutherford house for the purpose of obtaining his photograph to use in manipulating Grande and Saez's false identifications. (Dckt. #231 at 17). Although plaintiffs cast this claim as one of fabrication—which requires plaintiffs to demonstrate that Olszewski created evidence that he knew to be false, *Anderson v. City of Rockford*, 932 F.3d 494, 510 (7th Cir. 2019)—it is, in essence, a claim under Section 1983 for conspiracy—which requires plaintiffs to show that Olszewski was part of an agreement to deprive them of their constitutional rights and took overt acts in furtherance of that agreement that actually deprived them of their rights, *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). The Court addresses both claims below.

#### 1. Plaintiffs Fail to Establish a Fabrication Claim Against Olszewski Because They Cannot Demonstrate that he Created Evidence he Knew to be False.

A due process evidence-fabrication claim requires plaintiffs to "prove that a police officer manufactured false evidence against [them], which was later used to deprive [them] of [their] liberty in some way." *Moran v. Calumet City*, 54 F.4th 483, 498 (7th Cir. 2022). To establish this kind of due-process violation, plaintiffs must show that Olszewski created evidence that he

9

knew to be false. *Anderson*, 932 F.3d at 510. Here, no reasonable jury could find that Olszewski participated in creating the allegedly false evidence.

Plaintiffs first assert that Olszewski, Guevara, and Halvorsen (the "Defendant Officers") fabricated evidence by eliciting false testimony from Grande and Saez, falsifying police reports, obtaining plaintiffs' convictions using false evidence, and failing to correct fabricated evidence that they knew the be false when it was used against plaintiffs at trial. (Almodovar Compl. ¶141; Negron Compl. ¶64). Yet, it is undisputed that Olszewski did not have any contact with Grande and Saez, was not involved in eliciting testimony from Grande and Saez, did not prepare any of the Merkes/Rodriguez investigative reports; and did not testify at plaintiffs' trials. Because no evidence suggests that Olszewski was involved in the creation of fabricated evidence, summary judgment in his favor is proper on plaintiffs' evidence-fabrication claims. *Walker v. White*, No. 16 CV 7024, 2021 WL 1058096, at *7 (N.D.Ill. Mar. 19, 2021) (awarding summary judgment in favor of defendant officers where the record contained no evidence that the officers participated in creating the fabricated photographs).

Perhaps recognizing that fabrication claims against Olszewski—at least to the extent that they center on testimony and police reports—fall short of the requirements to survive summary judgment, Negron seemingly argues that the photographs of himself and Almodovar constitute fabricated evidence. (Negron Dckt. #218 at 15). In support of his contention, Negron cites a district court decision which held that *misleading* photographs, even where unaltered, can support fabrication claims. *See Grega v. Pettengill*, 123 F.Supp.3d 517, 540 (D.Vt. Aug. 18, 2015) (denying defendants' motion to dismiss based on plaintiffs' allegation that the defendant detective falsified evidence—in the form of a falsely contextualized photograph—that plaintiff used a beer bottle to commit an assault). But Negron does not point to any evidence which

10

suggests that the photographs taken by Olszewski were misleading and *Grega* does not suggest that an undisputedly accurate photograph of Negron taken by Olszewski amounts to fabricated evidence because it was *later* used by other detectives in an alleged false identification. In other words: no reasonable jury could find that the photographs taken by Olszewski could serve as the basis of plaintiffs' fabrication claim because they were not false. *See Anderson*, 932 F.3 at 510 (plaintiff must show that the defendant created evidence he knew to be *false*.). Plaintiffs' due process evidence-fabrication claim against Olszewski, therefore, cannot survive summary judgment.

### 2. Plaintiffs Fail to Establish a Claim Under Section 1983 for Conspiracy Against Olszewski Because They Cannot Demonstrate that he Entered into an Agreement to Deprive Plaintiffs of their Constitutional Rights.

The crux of plaintiffs' claims against Olszewski is their contention that he acted in a conspiracy with other officers to cause plaintiffs' constitutional injury. A civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means." *Grayson v. City of Aurora*, 157 F.Supp.3d 725, 744 (N.D.Ill. 2016), *quoting Scherer v. Balkema*, 840 F.2d 437, 441 (7th Cir. 1988). To establish conspiracy liability in a Section 1983 claim, plaintiffs must show that "(1) the individuals reached an agreement to deprive [them] of [their] constitutional rights, and (2) overt acts in furtherance actually deprived [them] of those rights." *See Beaman*, 776 F.3d at 510 (cleaned up). "Although an agreement may be inferred from circumstantial evidence, any such inference must be based on more than speculation or conjecture." *Akbar v. Calumet City*, 632 Fed.Appx. 868, 872 (7th Cir. 2015) (citing *Sow v. Fortville Police Dep't*, 636 F.3d 293, 304–05 (7th Cir. 2011)).

Almodovar asserts that a reasonable jury could infer a conspiracy involving Olszewski from the following facts: (1) Olszewski had a history of personal and racial animus toward

11

Almodovar; (2) Guevara inquired about the Insane Dragons, prompting Olszewski to arrest Almodovar at the Rutherford address as a pretense to obtain his Polaroid and frame him for the Merkes/Rodriguez murders; (3) Olszewski provided Almodovar's Polaroid to the detectives who then used it as part of the photo array and lineups during which plaintiffs were falsely identified; and (4) Olszewski expressed satisfaction when Almodovar was arrested when he entered the interview room where Almodovar was being held and exclaimed, "got you!" This evidence is either unsupported by the record or too speculative to raise a genuine issue of material fact for several reasons.

First, Almodovar's theory of conspiracy centers largely on his assertion that Olszewski orchestrated the Rutherford arrest and obtained Almodovar's photograph *after* speaking with Guevara. The record does not support this assertion. The Defendant Officers all testified that Olszewski obtained Almodovar's photograph *before* Guevara and/or Halvorsen came to the 25th District office seeking information about the Insane Dragons. This distinction in the overall timeline is subtle, but critical, because Almodovar fails to point to any contrary evidence from which a reasonable jury could infer that Olszewski ever spoke to Guevera and Halvorsen about the Merkes/Rodriguez murders prior to his obtaining Almodovar's photo, let alone came to an agreement with them to deprive Almodovar of his constitutional rights. *See, e.g.*, *Murray v. Maderak*, No. 99 C 1633, 2000 WL 705982, at *12 (N.D.Ill. May 22, 2000) ("Plaintiffs do not point to any meeting or discussion had among Defendants during which they could have plausibly agreed to violate Plaintiffs' rights, and the court cannot proceed on unsupplied facts."); *Lyons v. Adams*, 257 F.Supp.2d 1125, 1134 (N.D.Ill. 2003) (awarding summary judgment on a Section 1983 conspiracy claim arising out of a spontaneous beating where plaintiff failed to point

12

to evidence that the beating was the product of any sort of agreement).[6] Almodovar's arguments are further undermined by the fact that Olszewski provided the Polaroids taken of each of the four individuals arrested at Rutherford to Guevara and Halvorsen. This indicates that Olszewski did not single out Almodovar's photo to provide to his alleged co-conspirators after they came to the 25th District office seeking information about the Insane Dragons.

Instead of providing any evidence that Olszewski had a meeting or discussion with the defendant detectives prior to his obtaining Almodovar's photograph, Almodovar's conspiracy claim rests on evidence that Olszewski disliked Almodovar, had a history of using reprehensible racial slurs when speaking to him, and expressed happiness after he was arrested for the Merkes/Rodriguez murders. However, even accepting these unsavory facts as true for purposes of summary judgment, this evidence does not raise a genuine issue of material fact as to plaintiffs' conspiracy claim. *See, e.g., Dawson v. Brown*, 81 F.Supp.3d 670, 680-81 (C.D.Ill. 2015), *aff'd*, 803 F.3d 829 (7th Cir. 2015).

In *Dawson*, the plaintiff alleged that the defendant officers (Warnisher, Brown, and Stirmell) conspired with one another to deprive him of his statutory and constitutional rights during a physical altercation in plaintiff's driveway. *Id*. at 680. The *Dawson* court found there was no evidence that officers Warnisher and Brown had any relationship with Officer Stirmell prior to the night of the incident, such that plaintiff's evidence of a conspiracy was entirely speculative and insufficient to withstand summary judgment. *Id.* The court further noted that the officers were recorded on a digital device in Officer Stirmell's car joking about the incident after the plaintiff's arrest. *Id.* at 681. The Court explained that this evidence was insufficient to

---

[6] *See also Goetzke v. Ferro Corp.*, 280 F.3d 766, 778 (7th Cir. 2002) (explaining that numerous phone calls between alleged co-conspirators, "standing alone, merely proves that [the alleged co-conspirators] remained in contact," and "[t]o assert that the calls are evidence of a conspiracy is simply speculation").

13

show that the officers conspired to deprive plaintiff of his constitutional rights despite the fact that the evidence demonstrated that Officer Stirmell had a negative opinion of the plaintiff prior to the incident. *Id.*

Similarly, here, evidence of Olszewski's personal animus toward Almodovar prior to his arrest for the Merkes/Rodriguez murders is insufficient to raise an issue of fact as whether Olszewski entered into a conspiracy with Guevara and Halvorsen to deprive Almodovar of his constitutional rights. *See Chamberlain v. City of White Plains*, 986 F.Supp.2d 363, 389 (S.D.N.Y. 2013) (allegations of prior federal civil rights lawsuits against defendants which alleged that they used racial or ethnic slurs and engaged in other deprivations of the constitutional rights of minority groups was not sufficient to suggest a meeting of the minds to effectuate a deprivation of constitutional rights).

Nor does the admittedly close timing between when Olszewski took the photograph of Almodovar and when he provided Almodovar's picture (among pictures of other Insane Dragons) to defendant detectives suffice to raise an issue of fact as to Olszewski's participation in the alleged conspiracy in light of the undisputed facts – described above in Section II(F) – showing that Olszewski was otherwise uninvolved in the arrest and prosecution of Almodovar (and Negron) for the Merkes/Rodriguez homicides. *See, e.g., Walker*, 2021 WL 1058096, at *15 (finding insufficient evidence of a conspiracy where a defendant officer—who admittedly was initially on patrol with the officers who allegedly conspired to plant drugs—did not arrest plaintiff, speak to plaintiff, recover any drug evidence, write a case report, or testify at plaintiff's trial).

Negron's conspiracy argument fares no better. In essence, Negron asserts that Olszewski furthered the conspiracy by obtaining Negron's photo before the defendant detectives used it in

14

the photo array. (Negron Dckt. #218 at 19). This argument is simply too speculative to raise a genuine issue of material fact. Like Almodovar, Negron fails to point to any evidence from which a reasonable jury could infer that Olszewski came to an agreement with Guevara and Halvorsen to deprive Negron of his constitutional rights—particularly where Olszewski took Negron's photograph well before the Merkes/Rodriguez homicides and Negron admits that Guevara and Halvorsen obtained the photograph from a *different* officer. *See, e.g.*, *Murray*, 2000 WL 705982, at *12; *Lyons*, 257 F.Supp.2d at 1134.

In sum: because plaintiffs have failed to offer sufficient evidence to create a genuine dispute of fact as to whether Olszewski entered an agreement to violate their constitutional rights, their conspiracy claims cannot survive summary judgment.

### B. Plaintiffs Have Not Established Personal Involvement Sufficient to Maintain a Federal Malicious Prosecution Claim

To state a claim for malicious prosecution under Section 1983, a plaintiff "must do more than merely claim that [defendants] arrested and detained him without probable cause." *Snodderly v. R.U.F.F. Drug Enf't Task Force*, 239 F.3d 892, 901 (7th Cir. 2001) (citing *Sneed v. Rybicki*, 146 F.3d 478, 481 (7th Cir. 1998)). "[R]ather, he must allege that the officers committed some improper act after they arrested him without probable cause, for example, that they pressured or influenced the prosecutors to indict, made knowing misstatements to the prosecutor, testified untruthfully, or covered up exculpatory evidence." *Id.* (citing *Reed v. City of Chi.*, 77 F.3d 1049, 1053-54 (7th Cir. 1996)).

Here, plaintiffs have not pointed to any evidence that Olszewski exerted any pressure or influence on the prosecutors either to apply for the arrest warrant or to indict plaintiffs; made knowing misstatements to the prosecutors; or testified falsely at any subsequent adversarial proceeding. *Supra*, at Section II(F). Absent any evidence that Olszewski played an essential or

15

influential role in seeking or procuring the arrest warrant or indictment, plaintiffs' federal malicious prosecution claims against him are insufficient to withstand summary judgment.

    C. **Plaintiffs' Failure to Intervene Claim Fails**

Plaintiffs allege that Olszewski is liable for failing to intervene in the alleged illegal activities of Guevara and Halvorsen. To succeed on this claim, plaintiffs must demonstrate that Olszewski (1) knew that a constitutional violation was committed; and (2) had a realistic opportunity to prevent it. *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017). "Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997). On this record plaintiffs' failure to intervene claims do not survive summary judgment.

Almodovar asserts that even if Olszewski was not personally involved in compiling the photo arrays, the witness line-ups, the reports, or interacting with prosecutors at plaintiffs' criminal trial, he still had the opportunity to prevent these actions by declining to obtain a photo of Almodovar without first inquiring about its use. (Dckt. #231 at 31). But Almodovar's arguments rest on an unsupported read of the factual record. As explained above, although Olszewski obtained Almodovar's photo, there is no evidence in the record that he did so *after* speaking to the defendant detectives or that he obtained the photo at their direction. Almodovar does not otherwise point to a single fact in the record which shows or supports the reasonable inference that Olszewski was involved or knew of the alleged constitutional violations, beyond providing the photo of Almodovar that he previously procured. There are *no* facts suggesting

16

Olszewski knew of and condoned, facilitated, or otherwise approved of any of the unconstitutional conduct.

Negron similarly argues that Olszewski could have refused to provide Negron's photograph and that he could have spoken up before Negron's conviction to expose the alleged conspiracy to frame him. (Negron Dckt. #218 at 23–24). But Negron fails to point to a single fact in the record which shows or supports a reasonable inference that Olszewski provided Negron's photo to the defendant detectives or that Olszewski was involved or knew of the alleged constitutional violations.

Therefore, summary judgment on plaintiffs' failure to intervene claim is granted in Olszewski's favor. *See Collins, et al., v. City of Chicago, et al.*, No. 21-CV-02913, 2024 WL 5007836, at *10 (N.D.Ill. Dec. 6, 2024) (granting summary judgment where plaintiffs did not "point to a single fact in the record that would tend to show [the officer] could have intervened" in the alleged constitutional violation).

### D. The Court Relinquishes Jurisdiction Over Plaintiffs' State Law Claims

With the federal claims dismissed, plaintiffs' state law claims against Olszewski for malicious prosecution, civil conspiracy, intentional infliction of emotional distress, respondeat superior, and indemnification remain. The Seventh Circuit has described a "sensible presumption that if the federal claims drop out before trial, the district court should relinquish jurisdiction over the state-law claims." *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007). Accordingly, the Court, in its discretion, declines to exercise supplemental jurisdiction over plaintiffs' pendent state law claims. *See Carlsbad Tech. Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely

discretionary."); 28 U.S.C. §1367(c)(3). Accordingly, plaintiffs' state law claims against defendants are dismissed without prejudice so that they may be pursued in a state forum. *Doxtator v. O'Brien*, 39 F.4th 852, 867 (7th Cir. 2022) ("Without any federal claims over which it had original jurisdiction, the district court's decision not to exercise supplemental jurisdiction over the pendent state law claims was not an abuse of discretion.").

## CONCLUSION

For the foregoing reasons, defendant Olszewski's motions for summary judgment, (Almodovar Dckt. #207; Negron Dckt. #193), are granted as to plaintiffs' federal claims and the Court relinquishes jurisdiction over the state law claims that plaintiffs assert against Olszewski and dismisses those state law claims without prejudice.

**Date: January 10, 2025**

**Jeffrey I. Cummings**
**United States District Court Judge**